**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| JERRY WHISENHUNT, an individual, ANGELA WHISENHUNT, an individual, and MINUTES OF USE, LLC | *<br>* |
| | *   Civil Action No.: |
| v. | *   Section:<br>* |
| AMERACAT, INC., a corporation, | *   Judge: |
| and | * |
| MARKEL AMERICAN INSURANCE COMPANY, a corporation | *   Mag. Judge: |

## COMPLAINT

The Plaintiffs Jerry Whisenhunt, Angela Whisenhunt and Minutes of Use, LLC state this Complaint against Ameracat, Inc. and Markel American Insurance Company as follows:

**Parties and Jurisdiction**

1. At all material times the Plaintiffs Jerry Whisenhunt and Angela Whisenhunt (jointly and severally "Whisenhunt") were and still are a married couple residing at 707 Hernando Place, Dauphin Island, AL.

2. At all material times the Plaintiff Minutes of Use, LLC was and still is a limited liability company organized under the laws of the State of Oklahoma.  The residency of Minutes of Use LLC is deemed to be Alabama because Whisenhunt owns 100% of the LLC.  At all material times Minutes of Use LLC was and still is doing business as a recreational charter boat fishing company in Dauphin Island, Mobile County, and in Baldwin County, Alabama.

3. At all material times the Defendant Ameracat, Inc. ("Ameracat") was and still is a Florida corporation with its principal place of business at 3340 N. U.S. Highway 1, Fort Pierce, FL 34946.

4. At all material times the Defendant Markel American Insurance Company ("Markel") was and still is a citizen of Virginia with its statutory home address at 4521 Highwoods Pkwy. Glen Allen, VA 23060.  Markel is registered as an insurance company with the Alabama Insurance Commission.

5. There is complete diversity of citizenship between the parties.  Whisenhunt and Minutes of Use LLC are citizens of Alabama. Ameracat is a citizen of Florida. Markel is a citizen of Virginia. The claims in this case exceed $75,000.  Accordingly, this Court has diversity jurisdiction of this cause pursuant to 28 U.S. Code § 1332(a)(1).

6. Markel issued a marine insurance policy to Plaintiff Minutes of Use LLC, which at all material times did and still does business in Alabama.  This case includes a claim for breach of this marine insurance contract and associated bad faith misconduct.  This Court accordingly has admiralty jurisdiction of the marine insurance dispute under 28 U.S. Code § 1333.

**Facts**

7. At all material times Plaintiff Jerry Whisenhunt was and still is a licensed charter boat fishing captain owning and chartering several fishing vessels out of Gulf Shores and Dauphin Island, in Baldwin and Mobile Counties, Alabama.

8. At all material times the Plaintiff Minutes of Use LLC operated Whisenhunt's commercial chartering business in Mobile and Baldwin Counties, Alabama.

9. At all material times Ameracat was and still is a fiberglass boat manufacturer that builds new boats in Florida, and who advertises and sells boats throughout the United States including Alabama.

10. In October 2021 Whisenhunt was interested in acquiring a new charter boat for his fleet. He learned about Ameracat from two other Dauphin Island charter captains who owned Ameracat boats. He contacted Ameracat's president Scott Meitner and deposited $10,000 on a new 31-footer. At that time Whisenhunt informed Maitner that he was a professional charter boat captain on the Alabama Gulf coast, and that he was buying the new boat for the purpose of chartering her in the recreational fishing trade.

11. On or about December 6, 2021, Whisenhunt visited the Ameracat plant in Fort Pierce Florida. He noticed a new Ameracat 39 under construction, with the hull already out of the mold. Meitner showed him the new hull and provided design information about the 39-foot model. He told Whisenhunt that the 39-footer might be available because the prospective buyer was having family financial problems.

12. During their discussions Whisenhunt asked about the warranty on the 39-footer. Meitner replied that the boat would have a 10-year warranty. He did not describe any limitations on the warranty.

13. Whisenhunt told Meitner that he needed a new boat in time to charter her for the Alabama snapper season that would open June 1, 2022. Meitner replied that because the 39-footer was already out of the mold he agreed to complete and deliver her by June 1, 2022.

14. On December 22, 2021 Meitner informed Whisenhunt that the 39-footer under construction was available for him to purchase instead of the 31-footer. During

the next several weeks Ameracat provided plans and discussed the final price for the new boat.

15. On January 18, 2022, Meitner emailed Whisenhunt with information and terms for purchasing the 39-footer. He attached Invoice 620 containing construction details and a price of $394,850 for the boat ("the Vessel"). (Meitner's January 18 email is attached hereto and incorporated herein as "Exhibit A." Invoice 620 is attached hereto and incorporated herein as "Exhibit B.")

16. Throughout all these discussions up to and including January 18, 2022, Meitner continued to tell Whisenhunt that the Vessel would have a 10-year warranty. Meitner further continued to promise Whisenhunt that Ameracat would promptly complete construction of the Vessel in time to deliver her to Whisenhunt for the June 2022 snapper season.

17. Exhibits A and B and Meitner's oral statements about the 10-year warranty and the construction schedule constituted all the material terms of the proposed sale contract offered by Ameracat.

18. On or about January 31, 2021, Whisenhunt accepted the sales contract as proffered by Ameracat, and in reliance on such sales contract Whisenhunt paid Ameracat $269,350 toward the total price of $394,850. This price was approximately the "1/2 at build start" plus the "1/4 when out of the mold" quoted by Exhibit A.

19. Whisenhunt also bought for $88,535.74, and in February 2022 delivered to Ameracat, three new Suzuki 300 horsepower outboard engines for installation aboard the vessel.

20. When Whisenhunt visited the Ameracat plant in May 2022, he learned that

Ameracat had completed some work on the Vessel but not enough to finish and deliver her as promised by June 1, 2022. Meitner then promised that he would deliver her by June 30, 2022.

21. Ameracat failed to complete the Vessel by June 30 and by an ever-slipping series of later promised delivery dates for the next eleven months, during which Whisenhunt missed the opportunity to charter a 39-foot boat to recreational fishermen commencing June 1, 2022.

22. Finally Meitner promised that the Vessel would be complete and ready for delivery on May 22, 2023 (almost a year later than the agreed contract delivery date). This delay proximately caused Whisenhunt to lose the profits that he would have made between June 2022 and late May 2023 in the amount of $180,500.

23. When Whisenhunt arrived at Ameracat's Fort Pierce plant to pick up the Vessel on May 22, 2023 he requested that Ameracat deliver to him the title to the Vessel as evidenced by Ameracat's Builder's Certificate of Origin. Meitner responded the same day by delivering to Whisenhunt the title document to the Vessel. (The Builder's Certificate of Origin 05-22-23 is attached hereto and incorporated herein as Exhibit C). Plaintiffs Jerry and Angela Whisenhunt used this title document to register the Vessel in their names in Alabama on May 23, 2023.

24. Shortly after receiving title to the Vessel, Whisenhunt paid Ameracat $125,500, the claimed remaining balance of the agreed contract price. (Ameracat Invoice 669 is attached hereto and incorporated herein as Exhibit D.) However, Ameracat miscalculated the figure because it failed to credit Whisenhunt's original $10,000 deposit.

25. Thereafter Whisenhunt trailered the Vessel from Fort Pierce to his home at

Dauphin Island, Alabama and prepared her for charter to recreational fishermen in the Gulf of Mexico.

26. On or about June 22, 2023 Whisenhunt added the Vessel to the Minutes of Use LLC all risks hull insurance policy issued by Markel in Alabama, at an agreed value of the Vessel of $475,000 and an annual premium of $12,976. This policy covered "sudden and accidental direct physical loss or damage to the insured vessel." (The Markel policy and the June 2022 amendment are attached hereto and made a part hereof as Exhibit E).

27. On July 7, 2023, Whisenhunt was operating the Vessel in the Gulf of Mexico in 1 to 2 foot waves approximately 40 miles offshore from Dauphin Island on a fishing trip with several friends who were also charter captains. When the Vessel suddenly began to operate sluggishly, Whisenhunt discovered seawater entering the Vessel through underwater holes in the hull and threatening to sink her. He and his crew were able to navigate the Vessel slowly back to Dauphin Island and to take her out of the water onto her trailer. To prevent the Vessel from sinking during the trip, Whisenhunt was required to trim her so low at the stern that the three new Suzuki outboard engines were contaminated with salt water and damaged.

28. Shortly after the July 7 casualty Minutes of Use LLC notified Markel of its claim on the hull policy for damage to the Vessel. On July 20 and August 4, surveyors representing Whisenhunt and Markel inspected the Vessel. They found that the fiberglass in way of the port and center sponsons had peeled off causing a severe hull failure that enabled seawater to enter the hulls. They noted that the fiberglass laminate was resin-starved and visibly shiny. They found no evidence that the vessel had struck a submerged object. Finally, they noted that the estimated cost

to repair the Vessel would likely exceed her market value.  The condition of the fiberglass in the hull that allowed it suddenly to delaminate and open holes in the hull was invisible and not reasonably detectible at the time Whisenhunt accepted and took title to the Vessel, or at any time thereafter before July 7, 2022.  This condition constituted a latent defect.

29. On August 7, 2023 and again on November 7, 2023, Markel notified Minutes of Use LLC that although it acknowledged that "the main damage to the vessel is due to manufacturing and/or latent defects," it denied insurance coverage on the ground that the loss was due to a latent defect.  (Markel's Letters Denying Coverage is attached hereto and made a part hereof as Exhibit F and Exhibit G.)

30. Markel had no reasonable basis for interpreting the policy in a manner supporting denial of coverage, but did so anyway.  This conduct by Markel constituted bad faith under the circumstances.

31. On September 5, 2023, Whisenhunt notified Ameracat by letter from his counsel (attached hereto and made a part hereof as Exhibit H) that the extensive damage to the Vessel constituted a breach of Ameracat's warranties of merchantability and fitness for a particular purpose under  Florida Code 672.314 and 315; that Whisenhunt  was revoking acceptance of the Vessel as allowed by Florida Code 672.608,  on the ground that the nonconformity in the Vessel substantially impaired its value to him and that his acceptance of the Vessel was reasonably  induced  by the  difficulty  of  discovery  before  acceptance; that Florida law permitted him to recover "the difference between the market price at the time when the buyer learned of the breach and the contract price . . . . (Florida Code 672.713); and that under the circumstances he demanded that Ameract repay him the entire purchase

price of the Vessel. He further demanded payment of incidental and consequential damages as authorized by Florida Code 672.713.

32. As a legal result of this revocation of acceptance, the title to the Vessel has reverted to Ameracat although Whisenhunt has a security interest in the hull.

33. The defective condition of the Vessel's hull also constituted a breach of Ameracat's 10-year warranty, of the implied warranties of merchantability and fitness for a particular purpose by Ameracat, and of the contract to sell the Vessel.

34. As a result of Whisenhunt's revocation of acceptance of the Vessel, Ameracat is liable to Whisenhunt for the purchase price paid to Ameracat of $404,850 plus pre-judgment and post-judgment interest and costs.

35. The defective condition of the Vessel's hull rendered her useless to Whisenhunt as a revenue-earning charter boat as of July 7, 2022, the date of the casualty. Plaintiffs have been diligent in locating and contracting for a substitute vessel, but they have been unable to arrange for delivery of the substitute vessel until at least March 2024. As a proximate result Whisenhunt has lost and will continue to lose profits in the charter boat business of an additional $180,500.

36. Since the casualty Whisenhunt has arranged and incurred ongoing expenses to store the hull. He has also removed and stored the electronics that he bought and installed. His incidental expenses caused by the hull failure to date total $38,052.23, and these expenses will continue to be incurred in the future.

37. Whisenhunt has also removed, cleaned and stored the three salt water contaminated Suzuki outboard engines pending inspection by Defendants followed by sale for salvage, which he estimates will bring $30,000.

38. Whisenhunt has accordingly lost an estimated $58,535.74 as a proximate result of

the salt water contamination of the engines, which in turn was proximately caused by the catastrophic failure of the hull of the Vessel.

39. Ameracat is accordingly liable for loss of profits resulting from the delay in delivering the Vessel of $180,500; for repayment of the purchase price of the Vessel $404,850; for loss of profits in 2023 beginning July 7, and continuing until March 2024 of an additional $180,500; for loss of value of the engines of $58,535.74; and for incidental damages of $38,052.23 to date; for a total sum of $862,437.97, plus prejudgment and post-judgment interest thereon and costs.

40. Ameracat has failed and refused to acknowledge any fault or to pay any such damages

41. The Vessel suffered a "sudden and accidental direct physical loss or damage to the insured vessel" for which Markel has coverage.

42. Markel has no reasonable basis for refusing to pay Plaintiffs the agreed value of the Vessel of $475,000.

## CLAIM 1 – BREACH OF CONTRACT FOR DELAYED DELIVERY OF VESSEL

43. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

44. Ameracat entered a contract with Whisenhunt in which it promised to deliver the Vessel by June 1, 2022.  Ameracat knew that Whisenhunt was buying the Vessel for the purpose of chartering her in the recreational fishing trade on the Alabama Gulf Coast, and that late delivery would proximately cause loss of charter profits.

45. Ameracat breached this contract by failing to deliver the Vessel until May 2023.

46. As a proximate result of this breach of contract, Whisenhunt sustained damages for loss of charter profits in the amount of $180,500.

## CLAIM 2- REPAYMENT OF PURCHASE PRICE, INCIDENTAL AND CONSEQUENTIAL DAMAGES FOLLOWING REVOCATION OF SALE

47. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

48. Whisenhunt has revoked acceptance of the Vessel under Florida Code 672.608.

49. Ameracat is obligated to repay Whisenhunt the Vessel's purchase price of $404,850.

50. Ameracat is further obligated to pay Whisenhunt loss of charter profits between July 7, 2023 and March 2024 in the amount of $180,500.

51. Ameracat is further obligated to pay Whisenhunt the loss of market value of the three salt water contaminated outboard engines in the amount of $58,535.74.

52. Ameracat is further obligated to pay Whisenhunt incidental damages of $38,052.23.

## CLAIM 3 – BREACH OF EXPRESS WARRANTY

53. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

54. Ameracat has breached the 10-year express warranty that it promised to Whisenhunt in connection with selling the Vessel.

55. As a proximate result of such breach, Whisenhunt has sustained the damages described in Paragraphs 49-52 of this Complaint.

## CLAIM 4 – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

56. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

57. The Vessel contained latent defects in her hull that rendered her unfit for her ordinary purpose and unable to pass in the trade without objection.

58. Ameracat has breached the implied warranty of merchantability.

59. As a proximate result of such breach, Whisenhunt has sustained the damages described in Paragraphs 49-52 of this Complaint.

### CLAIM 5 – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

60. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

61. Ameracat knew that the particular purpose for which Whisenhunt bought the Vessel was to be commercially chartered to recreational fishermen in the waters of the Gulf of Mexico.  Ameracat further knew that Whisenhunt was relying on Ameracat's skill and judgment in selecting a suitable Vessel for this purpose.

62. Ameracat breached the implied warranty of fitness for a particular purpose.

63. As a proximate result of such breach, Whisenhunt has sustained the damages described in Paragraphs 49-52 of this Complaint.

### CLAIM 6 – BREACH OF CONTRACT OF INSURANCE BY MARKEL

64. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

65. During the term of the Markel policy the insured Vessel suffered  "sudden and accidental direct physical loss or damage to the insured vessel."

66. Markel has failed to prove the existence of any applicable policy exclusion.

67. Therefore Markel is liable to pay Whisenhunt the agreed value of the Vessel in the amount of $475,000.

### CLAIM 7 – BREACH DUTY OF GOOD FAITH BY MARKEL IN DENYING INSURANCE COVERAGE

68. Whisenhunt reavers the allegations of Paragraphs 1 to 42 of this Complaint.

69. Markel has no reasonable excuse for failing to honor its obligations under its insurance policy to Plaintiff Minutes of Use LLC, and is therefore guilty of bad

faith.

70. Plaintiff Minutes of Use LLC therefore claims all damages recoverable for bad faith including attorneys' fees and costs.

**WHEREFORE,** Plaintiff prays as follows:

1. That this Court issue a summons to Defendant Ameracat commanding it to to appear and answer the allegations of this Complaint.

2. That this Court order, adjudge and decree that Ameracat pay to Whisenhunt, and to Angela Whisenhunt as her interest as co-owner of the Vessel may justify, the following damages:

   a) Damages for loss of profits resulting from Ameracat's breach of contract in the late delivery of the Vessel in the amount of $180,500.

   b) Repayment of purchase price of the Vessel in the amount of $404,850.

   c) Damages for loss of profits resulting from the loss of the Vessel for charter from July 7, 2023 to March 2024 in the amount of $180,500.

   d) Incidental damages resulting from Whisenhunt's revocation of acceptance of the Vessel in the amount of $38,052.23.

   e) Pre-judgment and post-judgment interest against Ameracat on all such damages, and costs.

3. That this Court issue a summons to Defendant Markel commanding it to appear and answer the allegations of this Complaint.

4. That this Court order, adjudge and decree that Markel pay to Minutes of Use

LLC the following damages:

a) The Agreed valuation of the Vessel under the insurance policy of $475,000.

b) Additional damages recoverable under Alabama law including attorneys' fees.

c) Pre-judgment and post-judgment interest.

5. That this Court grant to Plaintiffs such other and further relief as justice may require.

Respectfully submitted,

/s/ A. Clay Rankin, III
A. CLAY RANKIN, III (RAN008)
Attorney for Plaintiff
RANKIN LAW, LLC
6463 Willowbridge Dr.
Fairhope, AL  36532
251-895-4388
clay.rankin@gmail.com

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

/s/ A. Clay Rankin, III
A. CLAY RANKIN, III (RAN008)
Attorney for Plaintiff
RANKIN LAW, LLC
6463 Willowbridge Dr.
Fairhope, AL  36532
251-895-4388
clay.rankin@gmail.com